UNITED STATES DISTRICT COURT
FOR THE
WESTERN DISTRICT OF NORTH CAROLINA
Charlotte Division
3:06 CV 386-MU

IN RE:

RFS ECUSTA INC. and
RFS US INC.

Tax I.D. No.:  23-3081989
               23-3081990

Debtors

Bankruptcy Case No. 03-10360
Bankruptcy Case No. 03-10358
Chapter 7
Jointly Administered

**ORDER GRANTING FOURTH INTERIM FEE APPLICATION
REQUEST OF MULLEN HOLLAND & COOPER PA,
AS COUNSEL TO THE CHAPTER 7 TRUSTEE, FOR THE
PERIOD FROM JULY 2006 THROUGH JANUARY 12, 2008**

This matter was heard upon due notice to all applicable parties pursuant to the United States Bankruptcy Code, the Bankruptcy Rules, the Local Rules of Practice of the United States District Court for the Western District of North Carolina and the Local Rules of Practice of the United States Bankruptcy Court for the Western District of North Carolina, and the Court concludes that no further or other notice is necessary.

**NOW,** upon consideration of the Fourth Interim Fee Application (the "Application") of Mullen Holland & Cooper P.A., Attorneys at Law, ("Applicant") for Compensation as Attorneys for Langdon M. Cooper, Trustee ("Trustee") for the above-referenced Debtors, as duly filed in this proceeding, in which the attorneys seek payment of compensation and reimbursement for expenses advanced;

**AND** upon consideration of the applicable law as set forth in a number of decisions of the United States Supreme Court and the Fourth Circuit Court of Appeals: Hensley v. Eckerhart, 461 U.S. 424 (1983); Blum v. Stenson, 465 U.S. 886 (1984); Pennsylvania v. Delaware Valley Cit. Council, 107 S.C. 3078 (1987); Lilly v. Harris-Teeter Supermarket, 842 F.2d 1496 (4th Cir. 1988); Daly v. Hill, 790 F.2d 1071 (4th Cir. 1986); and Barber v. Kimbrell's, Inc., 577 F.2d 216, cert. denied, 439 U.S. 934 (1978), which adopted the standards of Johnson v. Ga. Highway Express, Inc., 488 F.2d 714, 717-19 (5th Cir. 1974). Under the rule of Barber, these standards include the time and labor expended; the novelty and difficulty of the questions raised, the skill required to perform the legal services rendered; the attorney's costs in handling the case; the customary fee for like work; the

attorney's expectations at the outset of the case; the time limitations imposed by the client or circumstances; the amount in controversy and the results obtained; the experience, reputation and ability of the attorney; the undesirability of the case within the legal community in which the case arose; the nature and length of the professional relationship between attorney and client; and attorneys' fees in similar cases.

In Hensley, supra, the Court articulated a method for examining the attorney's requested fee:

> The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the matter multiplied by a reasonable hourly rate. This calculation provides an objective basis on which to make an initial estimate of the value of a lawyer's services.

"When the applicant for a fee has carried his burden of showing that the claimed rate and number of hours are reasonable, the resulting product is presumed to be the reasonable fee..." Blum v. Stenson, 465 U.S. at 897.

In Daly, supra, the Fourth Circuit suggested that most Johnson factors are appropriately considered in initially determining the lodestar figure, not in adjusting that figure upward. According to the Court, "the critical inquiry in determining reasonableness [of a fee award] is now generally recognized as the appropriate hourly rate." ... If the hourly rate is properly calculated, "the 'product of reasonable hours times [the] reasonable rate' normally provides a 'reasonable' attorney's fee..." Daly v. Hall, 790 F.2d at 1077. Under Blum the critical focus in calculating a reasonable attorney's fee is in determining the lodestar figure. A fee based upon reasonable rates and hours is presumed to be fully compensatory without producing a windfall. In "exceptional circumstances," this presumptively fair lodestar figure may be adjusted to account for results obtained and the quality of representation. Daly v. Hall, supra.

Here the Court has specifically reviewed the prevailing hourly rates of the professionals that practice before the Court and as customarily charged by professionals in this District for like matters, as well as the past and current hourly rates of the professionals employed by the Applicant as set forth in the Application, and the Court concludes that the hourly rates of the Applicant's professionals are proper, reasonable and wholly appropriate in Chapter 7 bankruptcy cases in the Western District of North Carolina for professionals with the skill and expertise of those employed by Applicant.

Further, in view of the fact that the Applicant is the law firm in which Mr. Cooper, the Trustee in these cases, is a senior partner, the Court also scrutinized the Application to differentiate between what would be routine "trustee work" under Section 704 of the Code, the compensation for which is limited by Section 326 of the Code, and legal representation of the Trustee, which is compensable under Section 330 of the Code. Dealing with the

issues in these complex cases involved a high degree of experienced legal skill. While it can sometimes be difficult to differentiate between what would be trustee administrative work and what would be separately compensable legal work, it was not difficult in these cases.[1] Clearly the Trustee has the right to obtain counsel to assist him in carrying out his duties under Section 704 of the Code, and this Court will grant him wide latitude in doing so. A case involving liquidation of tangible property is one thing; a case like the one at bar, which involves complex litigation, is wholly another. This is a mixed question of law and fact, and after reviewing the exhibits to Applicant's Application, and the record in these cases, the Court finds and concludes that the compensation sought in this Application is entirely appropriate and reasonable compensation for legal representation of the Trustee under Section 330 of the Code. Additionally the Court ratifies and approves the long-standing practice of the Bankruptcy Court in this District to permit trustees to employ themselves or their law firms as their counsel in bankruptcy cases.

The Court has reviewed the record in the Debtors' base bankruptcy cases and in all the Trustee's adversary proceedings. This record, which includes the pleadings and the arguments and testimony in the multiple hearings in these cases, establishes and reveals one of the best and most efficient bankruptcy case administrations and prosecution of claims that this Court has ever seen. The Trustee and his attorneys initially faced a bankruptcy case that appeared to be one in which only the secured creditor would receive any payment on its claim, and at that only a partial payment. The Trustee and his attorneys, all of whom are very experienced and talented bankruptcy practitioners[2], then administered and prosecuted the case to another level with outstanding results for the benefit of creditors that can only be described as beyond exceptional, and they have recovered thus far in excess of $16 million in complicated and successful litigation. They transformed a case in which the former employees of the Debtors and their counsel would have received nothing to a case where those creditors alone will receive at least a payment of $2.25 million on their unsecured priority claims. The Trustee and his attorneys invested hundreds and hundreds of hours on a purely contingent basis. Had they failed, they would have been paid nothing for their accrued fees and they would not have been reimbursed hundreds of thousands of dollars of their own funds which they advanced to the pay the required ongoing expenses of the litigation. Finally, the Court notes that it previously reviewed the prior Order of the Bankruptcy Court entered on September 28, 2005, pursuant to which Applicant and its co-counsel Moses & Singer LLP reduced their hourly rates by 25% beginning as of October 18, 2005, in exchange for the right to receive a contingency fee of 25% of the Trustee's recoveries in excess of the amount needed to repay GE Business Capital Group's

---

[1] Long ago one court correctly called this exercise "compulsory schizophrenia". *See In re Wilmon, Inc.* 61 B.R. 989 (Bankr. W.D. Pa. 1986).

[2] Indeed, Mr. Cooper is Board Certified in Business and Consumer Bankruptcy Laws by both the North Carolina State Bar and the National Board of Certification. Further he was recently recognized: (1) by *Law & Politics* and *Charlotte Magazine* as a 2008 North Carolina *Super Lawyer*, a designation limited to the top 5% of North Carolina lawyers; and (2) by *Business North Carolina Magazine,* as a member of North Carolina's 2008 *Legal Elite,* a peer review designation limited to the top 3% of North Carolina lawyers.

("GEBCC") secured claim in full, which this Court previously ratified and approved after notice and a hearing. From the record it appears the amount needed to repay GEBCC in full was $7,273,100.16. Therefore the amount of this earned contingency fee to which Applicant and Moses & Singer LLP are presently entitled is $2,198,508.93.

**AND** upon all proceedings had before the Court, after due notice and opportunity for hearing, after which no adverse interest appeared, and after due deliberation thereon, and under the legal standards set forth and applied in the cases discussed above, the Court concludes the Application seeks aggregate reasonable compensation, including that compensation due under the Order of September 28, 2005, described above, and reasonable payment for expenses advanced, and it is in the best interest of the estates that the Application be allowed; it is therefore

### ORDERED AND ADJUDGED:

1. The Application of Mullen Holland & Cooper P.A. is GRANTED.

2. Applicant is allowed compensation for services rendered during the application period in the amount of $346,704.86, and reimbursement of expenses during the application period in the amount of $38,910.06;

3. Applicant and Moses & Singer LLP are also allowed an additional fee of $2,198,508.93 under the Order of September 28, 2005, described above. They shall divide this fee between themselves as they privately determine with no need for any subsequent order of this Court regarding the allocation.

4. The Trustee is directed to make the payments authorized and approved in this Order, as well as payments of any previously approved compensation and reimbursement of expenses which remain unpaid.

This the ____ day of February, 2008.

Graham C. Mullen
United States District Court Judge